HUNTER, JR., Robert N., Judge.
Plaintiff Nathaniel Sargent ("Plaintiff") and Kristin Sargent ("Mrs. Sargent") (collectively "Plaintiffs") appeal the 4 April 2017 order granting summary judgment in favor of Austin Edwards ("Defendant Edwards"), Shawn Stephenson ("Defendant Stephenson") and Bloom Construction, L.L.C., ("Defendant Bloom Construction") (collectively "Defendants"). After review, we reverse the trial court's order granting summary judgment as to Plaintiffs' claims for battery, negligence and loss of consortium.
I. Factual and Procedural Background
On 29 December 2015, Plaintiffs filed a complaint against Defendants alleging (1) negligence, gross negligence, and battery against Defendant Edwards; (2) negligence, gross negligence and assault against Defendant Stephenson; (3) negligence, gross negligence and vicarious liability against Defendant Bloom Construction; and (4) reckless infliction of emotional distress and loss of consortium against all Defendants. Plaintiffs also sought punitive damages. In response Defendants denied the legal theories of the case, and asserted the affirmative defenses, inter alia, of waiver, estoppel, unclean hands, laches, contributory negligence, plaintiffs' wrongful conduct and assumption of the risk. On 9 February 2017, Defendants filed a motion for summary judgment on the grounds there is no dispute as to any material fact and Plaintiffs "cannot prevail upon their claims as a matter of law."
Plaintiffs' forecast of evidence tends to show on or about 31 October 2012, Defendants began construction on the property adjacent to Plaintiffs' home in Black Mountain, North Carolina. Defendant Bloom Construction's trucks used Plaintiffs' driveway "as a turnaround" for their large construction trucks. This caused damage to Plaintiffs' driveway. Plaintiff explained to Defendant Edwards, an employee of Defendant Bloom:
I told him our-I gave him a preface of our little home, and how we did everything to the home-the exterior-and with our hands; and that we didn't have a lot of money, so everything that we have done, and every piece on our property, meant something to us, and it was important; and that the importance of our property-I wanted him to understand that because the people that were working and bring supplies, or whatever they were doing, were turning around in our little driveway.
Our little driveway was-I explained-made of river rocks, and we pushed them around and made this oasis for ourselves-just little rocks that we could be proud of-and I wanted him to know how important it was.
I told him that the trucks, the cars, and the workers, were causing divots in our gravel and tearing it up. They were being inconsiderate, in parking in front of our house on our patches-our little front patch of grass, and our nice little hosta beds, and things, that we considered very important to us; and I wanted him to know that they were important to us, and, hopefully, alleviate this problem that we were having.
Defendant Edwards told the Bloom employees not to turn around in Plaintiffs' driveway. However Defendants' construction workers continued to use Plaintiffs' driveway as a turnaround. Plaintiff and Defendant Edwards had approximately three conversations about Defendant's workers using Plaintiffs' driveway. Defendant Edwards told Plaintiff, "[t]hat he had a small crew, and that he would make sure to speak to them."
On or about 31 December 2012, Plaintiffs sat on their front porch having coffee, and they observed Defendant Stephenson, another Bloom employee, attempt to turn his car around in Plaintiffs' driveway. Plaintiff asked Defendant Stephenson to not use the driveway. At that point, Defendant Stephenson asked Plaintiff, "[w]hy are you giving us such a hard time?" According to Plaintiff, Defendant Stephenson then "shouted obscenities at my wife and myself, and put his car in reverse and sped down the road, in reverse."
Plaintiff then went to the construction site next door in order to retrieve Defendant Edwards's phone number from the construction sign. While Plaintiff was at the site, Defendant Stephenson returned to the construction site in a truck, accompanied by Defendant Edwards. Defendant Edwards drove the truck and parked it "[h]alfway into my property, in the front of the house." The Defendants "jumped" out of the truck and approached Plaintiff. At that point, Plaintiff was standing "[i]n the street, in front of their house-or the property they were working on." Defendant Edwards asked Plaintiff what was going on. Plaintiff told Defendant Edwards the Bloom Construction Crew continued to use Plaintiffs' driveway after they repeatedly requested Defendants to refrain from doing so.
Defendants Edwards and Stephenson then approached Plaintiff. At that point, they were all in the street "[w]ithin two feet" of each other. Plaintiff felt the Defendants were "[i]nside my space." Plaintiff told Defendant Edwards "we're having the same problem-they're turning around in our driveway." According to Plaintiff:
The next thing that happened was the other male, Mr. Stephenson, got angry and was shrugging his shoulders and tensing up; and so, at that moment, I kind of-I removed-I stepped back, a little bit, and-you know, I got scared because of his demeanor and his stance.
When I say him-I'm sorry. Mr. Stephenson's stance. It was a fighting stance, like a boxer, you know; and they're a lot larger than I was, and I was scared.
Defendant Edwards then told Defendant Stephenson, "[g]o to the back of the yard." Defendant Stephenson then moved a few feet away towards the back of the property. At that point, the men were within four feet of each other. Next, "Mr. Stephenson postured up even more; and, in fear, [Plaintiff] grabbed around [Defendant Stephenson's] body-in fear of getting hurt-so [Defendant Stephenson] wouldn't hit [Plaintiff]." Plaintiff noted Defendant Stephenson moved toward him "immediately prior to the moment [he] made contact" with Defendant Stephenson.
Within seconds, Plaintiff and Defendant Stephenson were on the ground. Plaintiff was unable to recall where Defendant Edwards was in relation to himself and Defendant Stephenson at that point. Plaintiff stated:
I felt a tug on my shirt. I was screaming, Stop; we're done; this is dumb; this is over; stop.
I felt another tug on my shirt, and then a pain that I've never been able to even comprehend, that was so intense that I blacked completely out; and that's what happened next.
Plaintiff believed Defendant Edwards pulled his shirt because "[t]here was no one else there, within those moments."
When asked what caused Plaintiff's leg to break, Plaintiff responded "[e]xtreme force." The following colloquy occurred during Plaintiff's deposition:
Q And to the best of your knowledge, what was the source of that significant pressure that caused your leg to break?
A A human being.
Q In what regard? Did someone stomp on your leg with their foot?
A Yes.
Q Okay. Who stomped on your leg with their foot?
A Mr. Edwards.
Q Did you see Mr. Edwards stomp on your leg, causing it to break?
A No.
Q Okay. Then how do you know that it was Mr. Edwards stomping on your leg, causing your leg to break?
A There was no one else around, and he apologized several, several times, to myself and my wife, in that same instance, for doing it; and when-I heard his voice.
He was within close enough proximity, during those few seconds, that it would be an impossibility, I think, for someone else to have approached.
Plaintiff continued:
The mechanism was his boot-his foot-and downward force, as he lifted my body, with my little T-shirt, and stomped, towards the ground, on my foot, at an angle, and caused both bones to break, and immobilize me and put me in a state of unconsciousness, at that moment.
Plaintiff stated he didn't see Defendant Edwards's foot on his leg. After blacking out, the next thing Plaintiff remembered was "seeing the ground, and looking back to see if my leg was still attached." Plaintiff "scream[ed] in pain," and then his wife came. "The next person to say anything to me, to the best of my knowledge, was Mr. Edwards-in his apologies-to the best of my knowledge."
Defendant Edwards helped Plaintiff into his wife's car. Plaintiff and his wife drove to the hospital where a doctor diagnosed Plaintiff with a broken leg. A few days later, Plaintiff called the Black Mountain Police. The police advised Plaintiff to talk with a magistrate. The magistrate explained to Plaintiff he could press charges and also gave him "general advice."
After the accident, Plaintiff's leg was in a boot for "three to four months." Plaintiff suffered injuries including, but not limited to, "a spiral break in his lower tibia and the fibula in the upper portion of his lower leg[.]" This injury required surgery and the "placement of a titanium rod into [Plaintiff's] bone with screws[.]" Plaintiff also underwent physical therapy and experienced ongoing "pain, stress and extreme emotional distress." Because of this injury, Plaintiff "can no longer fully participate and enjoy daily activities" including "parenting, hiking, jogging, playing sports and other physical exercise[.]" Additionally, Plaintiff's injuries have permanently affected his career since his job required him to "stand and move frequently for up to 14 hours a day[.]" Finally, Plaintiff's injuries have caused Mrs. Sargent to experience "stress and extreme emotional distress and was deprived of the society, companionship and services of her husband."
On 20 March 2017, the trial court heard arguments for summary judgment.[1] Defendants' counsel first contended nothing in Plaintiffs' complaint or deposition testimony suggested Defendants engaged in extreme or outrageous conduct to support Plaintiffs' claim of intentional infliction of emotional distress. Defendants' counsel next noted in Plaintiff's deposition, Plaintiff stated he wrapped his arms around Defendant Stephenson because of Defendant Stephenson's "posture." Plaintiff also maintained Defendant Stephenson was approximately four feet away from him at the time. Defendants' counsel contended posturing is "not sufficient under North Carolina law to constitute an assault." Next, Defendants' counsel contended Edwards acted to "pull [Plaintiff] off his employee [Stephenson]," and this act does not constitute a "battery" in North Carolina.
Defendants' counsel next contended as to negligent hiring, supervision, and training against Defendant Bloom Construction, Plaintiffs failed to establish there was actual notice to the employer the employee was somehow unfit. Additionally, Plaintiffs failed to show how Defendant Stephenson's backing away from Plaintiff before Plaintiff tackled him constitutes negligent hiring, supervision or training. Defendants' counsel next contended Plaintiffs failed to plead or allege willful or wanton conduct sufficient to support punitive damages. Finally, as to Plaintiffs' claims of negligence, Defendants' counsel contended the undisputed facts show Defendant Edwards instructed Defendant Stephenson to go to the back of the construction site, and later Defendant Edwards pulled Plaintiff off Defendant Stephenson. Defendants contend neither act supports a negligence claim.
In response, Plaintiffs' counsel contended Defendant Stephenson was not merely posturing, but rather "lunged, ran at [Plaintiff] and "had clenched fists." As to the battery, Plaintiffs' counsel contended only a jury can determine whether Plaintiff was injured through "intentional conduct or [a] negligent act." Plaintiffs' counsel also contended Defendants are asking the trial court to look at the facts in the light most favorable to Defendants, or to adopt Defendants' version of the facts. Plaintiffs' counsel also stated it would "be in agreement for the Court to streamline this case for trial to remove" the claims for negligent training and supervision.
Defendants' counsel responded he asked Plaintiff in his deposition, "Did you see Mr. Edwards stomp on your leg causing it to break?" Plaintiff responded, "No." Defense counsel also asked Plaintiff, "Did you see Mr. Edwards' foot on your leg?" Plaintiff again answered "No." Defendants' attorney then stated, "[t]o the extent he's saying he felt a foot on his leg while these men are rolling on the ground, that is pure, inadmissible speculation."
The trial court then thanked counsel and stated it would notify them of its decision.
On 4 April 2017, the trial court entered an order granting Defendants' motion for summary judgment, and dismissing Plaintiffs' complaint with prejudice. Plaintiffs appealed.
II. Standard of Review
This Court reviews the trial court's grant of summary judgment de novo. In re Will of Jones, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008). This Court must review the record in the light most favorable to the non-movant and draw all inferences in the non-movant's favor. Dobson v. Harris, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000).
Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2016). A party opposing a motion for summary judgment must only establish the existence of a genuine issue of material fact, and it need not show it would prevail on the issue at trial. In re Will of Edgerton, 29 N.C. App. 60, 63, 223 S.E.2d 524, 526, cert. denied, 290 N.C. 308, 225 S.E.2d 832 (1976).
"The burden of proof rests with the movant to show that summary judgment is appropriate." Frankenmuth Ins. v. City of Hickory, 235 N.C. App. 31, 34, 760 S.E.2d 98, 100 (2014).
"A defendant may show entitlement to summary judgment by: '(1) proving that an essential element of the plaintiff's claim is nonexistent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense which would bar the claim.' " Blackburn v. Carbone, 208 N.C. App. 519, 525, 703 S.E.2d 788, 794 (2010) (quoting Carcano v. JBSS, LLC, 200 N.C. App. 162, 167, 684 S.E.2d 41, 46 (2009).)
III. Analysis
Plaintiffs argue the trial court erred in granting Defendants' motion for summary judgment because genuine issues of material fact exist within each of Plaintiffs' claims. We agree in part. We address each of Plaintiffs' claims in turn.
A. Assault
"The elements of assault are intent, offer of injury, reasonable apprehension, apparent ability, and imminent threat of injury." Wilkerson v. Duke Univ., 229 N.C. App. 670, 675, 748 S.E.2d 154, 159 (2013) (quoting Hawkins v. Hawkins, 101 N.C. App. 529, 533, 400 S.E.2d 472, 475 (1991) ). "The gist of an action for assault is apprehension of harmful or offensive contact." Morrow v. Kings Department Stores, Inc., 57 N.C. App. 13, 19, 290 S.E.2d 732, 736, disc. review denied, 306 N.C. 385, 294 S.E.2d 210 (1982).
To state an actionable claim for civil assault, Plaintiff must plead an "overt act or an attempt, or the unequivocal appearance of an attempt, with force or violence, to do some immediate physical injury to the person of another." Dickens v. Puryear, 302 N.C. 437, 445, 276 S.E.2d 325, 331 (1981) (emphasis in original, citation and quotation marks omitted). "The display of force or menace of violence must be such to cause the reasonable apprehension of immediate bodily harm." Id. at 445, 276 S.E.2d at 331. A mere threat, unaccompanied by an offer or attempt to show violence, is not an assault. State v. Daniel, 136 N.C. 571, 574, 48 S.E.2d 544, 545 (1904).
Plaintiffs' complaint alleges "Defendant Stephenson intended to cause and did cause Mr. Sargent to suffer apprehension of an immediate harmful contact." Additionally, in Plaintiff's answer to Defendant's Interrogatory question, Plaintiff stated:
[W]hile I was sitting on the front porch having coffee with my wife, the foreman was leaving the site and I saw him about to turn around in our driveway so I asked him not to. He yelled at me in a hostile tone of voice and when I asked him what he said he sped backwards down the street .... As I walked next door to get the telephone number off of a sign, a truck drove up and the foreman, Shawn Stephenson, and Austin Edwards got out of the truck. Mr. Stephenson approached me and I asked if he was going to tell Mr. Edwards what he had said to me earlier. Mr. Edwards noticed the hostility and ordered his foreman to go to the back of the yard several times but the foreman did not move. Finally the foreman started to leave but cursed at me and started muttering under his breath. I followed the foreman for a couple of feet when he turned around and stood in a fighting stance. I felt very threatened, fearing that he was getting ready to hit me. To prevent him from hitting me I wrapped my arms around him. We fell to the ground and I felt Mr. Edwards yank on my t-shirt to pull us apart.
Additionally, in his deposition, Plaintiff stated at the time Defendant Stephenson was "posturing," Plaintiff and Defendant Stephenson were "within four feet" of each other. Viewing the evidence in the light most favorable to the Plaintiffs, we cannot conclude Plaintiffs alleged sufficient evidence to support a claim for assault. Here, there is nothing Defendant Stephenson did, or said, that meets the required elements of an assault against Plaintiff. Defendant Stephenson did not verbally threaten to harm Plaintiff. Defendant Stephenson's actions, according to Plaintiff's interrogatory, amounted to no more than standing "in a fighting stance" four feet away from Plaintiff. Also, Plaintiff contended Defendant Stephenson took a step towards Plaintiff. This, without more, is insufficient to constitute an actionable assault by Defendant Stephenson. We conclude the trial court properly entered summary judgment as to this issue.
B. Battery
"A 'battery' is the offensive touching of the person of another without his/her consent[.]" City of Greenville v. Haywood, 130 N.C. App. 271, 275, 502 S.E.2d 430, 433, disc. review denied, 349 N.C. 354, 525 S.E.2d 449 (1998). "The elements of battery are intent, harmful or offensive contact, causation, and lack of privilege." Hawkins v. Hawkins, 101 N.C. App. 529, 533, 400 S.E.2d 472, 475 (1991).
Plaintiffs contend even though Plaintiff did not see Defendant Edwards step on Plaintiff's leg, Plaintiffs presented evidence showing it is more likely than not Edwards stepped on Plaintiff's leg since the other Defendant was on the ground. We agree. Viewing the evidence in the light most favorable to the non-moving party, we conclude Plaintiffs alleged sufficient evidence to surpass summary judgment on the issue as to how Plaintiff's leg was fractured.
C. Negligence
Our State Supreme Court has held, "[n]egligence claims are rarely susceptible of summary adjudication, and should ordinarily be resolved by trial of the issues." Lamb v. Wedgewood South Corp., 308 N.C. 419, 425, 302 S.E.2d 868, 871 (1983). "[I]t is only in exceptional negligence cases that summary judgment is appropriate because the rule of the prudent man, or other applicable standard of care, must be applied, and ordinarily the jury should apply it under appropriate instructions from the court." Moore v. Fieldcrest Mills, Inc., 296 N.C. 467, 473-74, 251 S.E.2d 419, 424 (1979). "Even where there is no dispute as to the essential facts, where reasonable people could differ with respect to whether a party acted with reasonable care, it ordinarily remains the province of the jury to apply the reasonable person standard." Moore v. Crumpton, 306 N.C. 618, 624, 295 S.E.2d 436, 441 (1982).[2] "[A] [p]laintiff is required to offer legal evidence tending to establish beyond mere speculation or conjecture every essential element of negligence, and upon failure to do so, [summary judgment] is proper." Young v. Fun Services-Carolina, Inc., 122 N.C. App. 157, 162, 468 S.E.2d 260, 263 (1996) (quoting Roumillat v. Simplistic Enterprises, Inc., 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992) ).
Our review of the evidence reveals a genuine issue of material fact as to whether Plaintiff acted as a reasonably prudent person under the circumstances. There is also an issue of material fact as to whether Defendant Edwards negligently stepped on Plaintiff's leg when he was trying to separate Plaintiff from Defendant Stephenson. Therefore, summary judgment was not appropriate on the ordinary negligence issues as to Defendant Edwards.
D. Intentional Infliction of Emotional Distress[3]
The elements for a claim for intentional infliction of emotional distress are "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." Dickens v. Puryear, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981).
Our courts have held extreme and outrageous conduct is that which "exceeds all bounds of decency tolerated by society[.]" West v. King's Dept. Store, Inc., 321 N.C. 698, 704, 365 S.E.2d 621, 625 (1988). Additionally, that conduct must be "regarded as atrocious, and utterly intolerable in a civilized community." Briggs v. Rosenthal, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985) (quoting Restatement (Second) of Torts § 46, Comment d). North Carolina courts define severe emotional distress as "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Johnson v. Ruark Obstetrics, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990).
Our Court has found the following comment from the Restatement (Second) of Torts instructive:
The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind ....
Briggs at 677, 327 S.E.2d at 311 (quoting Restatement § 46, Comment d). Viewing the evidence in the light most favorable to Plaintiffs, we conclude there is no evidence of any facts upon which a jury could find Defendants' conduct to be extreme or outrageous to meet the high threshold imposed by our State law for the tort of Intentional Infliction of Emotional Distress. Plaintiff entered Defendants' property and initiated contact with Defendant Stephenson. Even if a jury found it reasonable for Plaintiff to feel threatened by Defendant Stephenson, Plaintiffs fail to allege the conduct of either Defendant was so outrageous to rise to the level to intentionally inflict emotional distress upon Plaintiffs.
As to Plaintiffs' claims regarding Defendant Bloom's negligence, Plaintiffs' counsel stated at the hearing for summary judgment:
As to negligent training and supervision. ... We would be in agreement for the Court to streamline this case for trial to remove those claims, your Honor. Those were included out of caution to see what kind of criminal regard or anything that may come up on Mr. Stephenson. And we would be fine with the Court disposing of those two claims, your Honor, and would do that by consent if necessary.
Based on the foregoing, we conclude Plaintiffs voluntarily dismissed these claims at the summary judgment hearing, and we need not review them.
E. Vicarious Liability
This Court defines agency as the relationship which arises from the "manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Colony Associates v. Fred L. Clapp & Co., 60 N.C. App. 634, 637-38, 300 S.E.2d 37, 39 (1983) (quoting Restatement (Second) of Agency § 1(1) (1957) ). The parties do not contest on 31 December 2012, Defendants Stephenson and Edwards were employed by Defendant Bloom. However, Plaintiffs fail to show the conduct of Defendant Stephenson and Defendant Edwards was done in the course of their employment with Defendant Bloom. Plaintiffs fail to show Defendants Edwards and Stephenson involved themselves with Plaintiff on Defendant Bloom's behalf, or acted in the course of their employment. Plaintiffs also fail to allege or show Defendant Bloom had notice or reason to believe its employees would commit assault or battery. Summary Judgment was proper as to Defendant Bloom.
F. Punitive Damages
N.C. Gen. Stat. § 1D-15 sets forth the "Standards for recovery of punitive damages." That statute provides:
(a) Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded:
(1) Fraud.
(2) Malice.
(3) Willful or wanton conduct.
(b) The claimant must prove the existence of an aggravating factor by clear and convincing evidence.
(c) Punitive damages shall not be awarded against a person solely on the basis of vicarious liability for the acts or omissions of another. Punitive damages may be awarded against a person only if that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages, or if, in the case of a corporation, the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to the punitive damages.
N.C. Gen. Stat. § 1D-15 (2017).
Here, Plaintiffs fail to forecast evidence tending show either Defendant Stephenson's or Defendant Edwards's conduct supports an award of punitive damages. As to Defendant Edwards, Plaintiff admitted he had several polite conversations with Defendant Edwards prior to 31 December 2012. Plaintiff admitted that just prior to the altercation, Defendant Edwards told Defendant Stephenson to remove himself from the situation and go to the back of the property. Plaintiff contends Defendant Edwards either negligently pulled Plaintiff off Defendant Stephenson, or intentionally stepped on Plaintiff's leg in the course of the fight. Not all intentional acts satisfy the legal threshold for punitive damages. Plaintiff failed to produce evidence of willful, wanton, malicious, or aggravated conduct by Defendant Edwards to warrant punitive damages. We conclude Plaintiff's evidence, considered in a light most favorable to him, fails as a matter of law to support an award of punitive damages against Defendant Edwards.
Plaintiff testified in his deposition that Defendant Stephenson shouted obscenities toward him as he attempted to turn around in Plaintiff's driveway. Additionally, Plaintiff testified, "Mr. Stephenson ... got angry and was shrugging his shoulders and tensing up; and so, at that moment, I kind of-I removed-I stepped back, a little bit, and-you know, I got scared because of his demeanor and his stance." We conclude, as a matter of law, considering all of the circumstances in a light most favorable to Plaintiff, that Defendant Stephenson's conduct was neither willful, wanton, malicious nor aggravated to justify punitive damages against Defendant Stephenson.
G. Loss of Consortium
North Carolina allows an action for loss of consortium. Nicholson v. Hugh Chatham Mem. Hospital, 300 N.C. 295, 266 S.E.2d 818 (1980). Only one recovery is allowed for the loss of consortium between husband and wife. Id. at 304, 266 S.E.2d at 823. Under Nicholson, the "injury involved is to the marriage as an entity." Id. at 303, 266 S.E.2d at 823. Loss of consortium is a derivative action, and, under Nicholson, a spouse cannot recover for loss of consortium unless the action of the injured plaintiff is successful. N.C.P.I.-Civil 800.65 (1999). The contributory negligence of the injured plaintiff is also a bar to the recovery of the spouse. Id.
Mrs. Sargent's loss of consortium claim survives summary judgment since Plaintiff's claims of battery and negligence survive against Defendant Edwards.
AFFIRMED IN PART AND REVERSED IN PART.
Report per Rule 30(e).
Judges INMAN and BERGER concur.

Defendants did not assert any affirmative defenses at the summary judgment hearing.

However, summary judgment is appropriate in a cause of action for negligence where "the forecast of evidence fails to show negligence on defendant's part, or establishes plaintiff's contributory negligence as a matter of law." Stansfield v. Mahowsky, 46 N.C. App. 829, 830, 266 S.E.2d 28, 29 (1980). At the summary judgment hearing, Defendants stated, "We do not raise [contributory negligence] as a basis in our Motion for Summary Judgment at this time." Because Defendants failed to argue this affirmative defense, we deem it abandoned on appeal. See N.C.R. App. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion[.]").

In their complaint, Plaintiffs title this cause of action "Reckless Infliction of Emotional Distress." There, Plaintiffs allege Defendants' acts were "intentional, willful, wanton oppressive, reckless and in callous disregard ..." However, in their brief to this Court, Plaintiffs title this cause of action and argue "Intentional Infliction of Emotional Harm."